IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JIM REICH, JR. and KATHLEEN MITTEL, | ) | |
| | ) | |
| Plaintiffs, | ) | No. 10 C 3155 |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| COUNTY OF COOK, | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION AND ORDER

Plaintiffs Jim Reich, Jr. and Kathleen Mittel brought a three-count complaint alleging that defendant Cook County failed to pay them for hours they worked in excess of a forty hour workweek. The complaint alleges violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq. (Count I); the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS 115/1 et seq. (Count II); and the Illinois Minimum Wage Act ("IMWL"), 820 ILCS 105/1 et seq. (Count III). Defendant Cook County has moved for summary judgment.[1] For the reasons discussed below, defendant's motion for summary judgment is granted.

### DISCUSSION

**I.  Legal Standard**

Summary judgment is proper when the pleadings, discovery, and disclosure materials on file, as well as affidavits, demonstrate that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Winsley v. Cook County, 563 F.3d 598,

---

[1] In January 2011, defendants Cook County Medical Examiner and County of Cook moved to dismiss the complaint under Fed. R Civ. P. 12(b)(6). Defendant Cook County Medical Examiner's motion to dismiss was granted because it lacked capacity to be sued as a subunit of the County of Cook. Defendant County of Cook's motion was denied. Defendant Cook County subsequently filed for summary judgment.

602-03 (7th Cir. 2009). In reviewing a summary judgment motion, "[t]he court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." Payne v. Pauley, 337 F.3d 767, 770 (7th Cir. 2003) (citation omitted). On a motion for summary judgment, the entire record is considered with all reasonable inferences drawn and all factual disputes resolved in favor of the non-movant. Turner v. J.V.D.B. & Assocs., Inc., 330 F.3d 991, 995 (7th Cir. 2003).

The burden of establishing a lack of any genuine issue of material fact rests on the movant. Outlaw v. Newkirk, 259 F.3d 833, 837 (7th Cir. 2001). The non-movant, however, must make a showing sufficient to establish any essential element for which the non-movant will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Binz v. Brandt Constr. Co., 301 F.3d 529, 532 (7th Cir. 2002).

## II.     Undisputed Facts

The following facts come from the parties' L.R. 56.1 statements and are undisputed. Plaintiffs work as toxicologists at the Cook County Office of the Medical Examiner, which provides investigative services related to deaths that take place throughout Illinois. Plaintiffs' employment is governed by a collective bargaining agreement ("CBA") between their union and defendant. Reich was hired by the Cook County Medical Examiner in 1984; Mittel in 1985. Both currently hold the job title of Toxicologist II. Duties of that position include extracting and analyzing forensic samples, maintaining instruments, performing alcohol and carbon monoxide testing, and storing and disposing of tissues.

### III. Defendant's Summary Judgment Motion

### A. Count I: Fair Labor Standards Act

Defendant argues that it is entitled to summary judgment on Count I, plaintiffs' claim for unpaid overtime under the FLSA, because plaintiffs are exempt from the FLSA as "learned professionals." Because the undisputed facts show that plaintiffs are indeed "learned professionals" under the FLSA, defendant is entitled to summary judgment on this claim.

Executive, administrative, or professional employees, one type of which is a "learned professional," are exempted from the FLSA. 29 U.S.C. § 213(a)(1). A "learned professional" is an employee who is, 1) "[c]ompensated on a salary or fee basis at a rate of not less than $455 per week," and 2) "[w]hose primary duty is the performance of work . . . [r]equiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction." 29 C.F.R. § 541.300(a). Plaintiffs do not dispute that they earn over $455 a week. Plaintiffs do contest, however, that they were compensated on a salary or fee basis—according to plaintiffs, they were compensated on an hourly basis—and that their position meets the second prong of the "learned professionals" test. For the following reasons, neither contention is sufficient to avoid summary judgment.

#### 1. Salary Basis

For defendant to establish that plaintiffs are compensated on a "salary basis," it must show that they "regularly receive[] each pay period on a weekly, or less frequent[,] basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed."

3

29 C.F.R. § 541.602(a). Defendant's undisputed evidence demonstrates that plaintiffs meet this requirement.

Defendant first points out that the CBA calculates plaintiffs' earnings in biweekly and annual increments. This is not conclusive, however, because the CBA also calculates plaintiffs' income in hourly increments, and in one place uses "hourly" language: "Employees in the job classifications set forth in Appendix A to this Agreement [a category that includes plaintiffs] shall receive the <u>hourly rate</u> provided for their respective grade and length of service in the job classification." CBA, Art. 5 (emphasis added).[2] Defendant fails to note, however, that the CBA also—and much more frequently—uses the term "salary" to describe employees' income. For example, the CBA describes Appendix A as establishing "salary grade[s]." CBA, Art. V, § 5.3(A) ("An employee who is promoted to a job in a higher <u>salary</u> grade shall be entitled to placement in the step of the new <u>salary</u> grade which will provide a <u>salary</u> increase at least two (2) steps above the <u>salary</u> received at the time the promotion is made, provided that: -- 1. The new <u>salary</u> does not exceed the maximum established for the grade to which the employee is promoted. 2. The new <u>salary</u> is not below the first step established for the grade to which the employee is promoted.") (emphases added). <u>See</u> <u>also</u> <u>id.</u> at § 5.3(C) (referring to "salary grade"); <u>id.</u> at § 5.3(D) ("An employee transferring from one department to another in the same

---

[2] Plaintiffs reason that the biweekly and annual figures are based on the hourly wages multiplied by forty hour workweeks, and therefore cannot be considered salaries. Plaintiffs have no evidentiary support for this proposition, and it could just as easily be said that the CBA starts with annual or biweekly earnings, and then extrapolates an hourly rate from those figures. That would, in fact, be the more logical conclusion, because defendant needs a means of calculating the hours-based overtime that plaintiffs received for weekends and holidays, as well as the rates for part-time employees, <u>see</u> CBA, Art. V, § 5.5, and for employees who work on holidays, <u>see</u> <u>id.</u> at § 6.7.

4

job classification and/or grade shall be eligible to receive the salary the employee has been receiving at the time of transfer.") (emphasis added). Regardless, because the CBA calculates plaintiffs' compensation in both biweekly and hourly increments, it cannot alone establish that plaintiffs receive a salary instead of an hourly wage.

Defendant next argues that plaintiffs are clearly salaried because the CBA's biweekly amount is guaranteed, subject to only the deductions the FLSA permits for exempt employees. Plaintiffs respond that because their pay is subject to additional deductions, the biweekly amount is not guaranteed. "If an employer docks an employee's pay for partial day absences, violations of rules other than those of safety, or based on the quantity or quality of the employee's work, the employee is not considered to be on a salary basis." Kennedy v. Commonwealth Edison Co., 410 F.3d 365, 370 (7th Cir. 2005) (quoting Piscione v. Ernst & Young, 171 F.3d 527, 534 (7th Cir. 1999)). An employer may, however, reduce an exempt employee's salary in a number of circumstances. Here, plaintiffs have not pointed to any deductions beyond those expressly contemplated by the FLSA for exempt employees.

First, it is undisputed that plaintiffs' pay is subject to reduction for disciplinary reasons and that plaintiffs' pay was in fact reduced for disciplinary reasons, but this is irrelevant to whether plaintiffs can be considered salaried, because the regulations permit such deductions for exempt employees. 29 C.F.R. § 541.602(b)(5) (an exempt employee may be subject to an unpaid disciplinary suspension of one or more full days imposed in good faith for workplace conduct rule infractions).

Second, it is undisputed that plaintiffs' pay is deducted when they are late—but it is also undisputed that defendant has a policy of deducting latecomers' pay because of an official policy

5

based on public accountability. Public agency employers may make deductions from exempt employees' pay for partial-day absences for personal reasons or because of injury or illness according to "a policy or practice established pursuant to principles of public accountability." 29 C.F.R. § 541.710(a); see Conroy v. City of Chicago, 644 F. Supp. 2d 1061, 1066-67 (N.D. Ill. 2009). Defendant has presented testimony (from the Chief Medical Examiner) that the office policy is to reduce an employee's pay when he or she comes in late because "the taxpayers deserve to get their money's worth from County employees." Rather than presenting controverting evidence, plaintiffs simply argue that this exception is irrelevant because plaintiffs are paid on an hourly basis. Mere argument cannot constitute a factual dispute sufficient to preclude summary judgment.

Third, as defendant contends, the undisputed facts that the CBA allows plaintiffs to earn overtime and that defendant has in fact paid plaintiffs overtime for weekends and holidays, do not prevent plaintiffs from being salaried employees. The regulations permit an employer to "provide an exempt employee with additional compensation without losing the exemption or violating the salary basis requirement, if the employment arrangement also includes a guarantee of at least the minimum weekly-required amount paid on a salary basis." 29 C.F.R. § 541.604(a). Thus, "an employer may pay an exempt professional additional compensation, including for overtime hours, without running afoul of the salary basis requirement." Valcho v. Dallas County Hosp. Dist., 658 F. Supp. 2d 802, 809 (N.D. Tex. 2009) (citing 29 C.F.R. § 541.604(a)).

Therefore, plaintiffs have failed to establish that a genuine material dispute exists that precludes the conclusion that defendant employs plaintiffs on a salary basis.

### 2. Duties Test

Nor is there a factual dispute over whether plaintiffs' primary duty is "the performance of work requiring advanced knowledge in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction," 29 C.F.R. § 541.301(a)(4), "as distinguished from performance of routine mental, manual, mechanical or physical work," id. at § 541.301(b). Indeed, plaintiffs' own (uncontroverted) deposition testimony, along with defendant's job description for Toxicologist II, demonstrate that plaintiffs' position qualifies under this language.

The regulations explain that "[t]he best prima facie evidence that an employee meets this requirement is possession of the appropriate academic degree." 29 C.F.R. § 541.301(d). Here, the appropriate academic degree, as plaintiff testified, is a bachelor's degree in chemistry, biology, biochemistry, or a related field, supplemented by two years of professional work in a toxicology lab, along with certification as a Laboratory Analysis Technician by the Illinois State Police. Although there is a preference for additional graduate-level coursework, this is not required.

It is undisputed that both plaintiffs have more than two years of professional work in a toxicology lab and the appropriate certification. Plaintiffs contend that there is at least a dispute as to whether they possess the appropriate academic degrees, but they are incorrect. Mittel has a bachelor's degree of science from the University of Illinois at Chicago, and has done some post-graduate work toward an MBA in criminal justice and some post-graduate work as a teaching assistant. Reich has an associate's degree in applied science from Triton College and has enough college credits for a bachelor's degree in biology, psychology, or both at Northeastern Illinois

University. The regulations state that "customarily" means that the exemption is also available to employees in such professions "who have substantially the same knowledge level and perform substantially the same work as the degreed employees, but who attained the advanced knowledge through a combination of work experience and intellectual instruction." 29 C.F.R. § 541.301(d); see Piscione, 171 F.3d at 543 (employees whose duties include collecting information can still fall within the professional exemption if they are also required to interpret that data) (citation omitted).

Therefore, because defendant has established that there is no genuine material factual dispute preventing the conclusion that plaintiffs are exempt from the FLSA as "learned professionals," defendant is entitled to summary judgment on plaintiff's FLSA claim.

## II. Count II: Illinois Wage Payment and Collection Act

Plaintiffs contend that, by failing to timely pay them for time worked after their shifts ended, defendant violated the IWPCA's requirement that employers pay "all wages earned by any employee during a semi-monthly or bi-weekly pay period . . . not later than 13 days after the end of the pay period in which such wages were earned." 820 ILCS 115/4.

As defendant correctly points out, however, plaintiffs cannot prevail on this claim because they failed to exhaust the CBA's grievance and arbitration procedures before seeking judicial relief.[3] See McCoy v. Maytag Corp., 495 F.3d 515, 524 (7th Cir. 2007) ("[I]f a CBA establishes a grievance and arbitration procedure for the redress of employee complaints, employees wishing to assert claims based on a CBA first must exhaust the grievance procedure

---

[3] Although defendant also argues that it is entitled to summary judgment because it is undisputed that plaintiffs are not due any unpaid back wages for time worked after their shifts ended, the court need not reach this argument.

before resorting to a judicial remedy."); see also Atchley v. Heritage Cable Vision Assocs., 101 F.3d 495, 501 (7th Cir. 1996); Gelb v. Air Con Refrigeration & Heating, 826 N.E.2d 391, 400 (Ill. App. Ct. 2005). The CBA contains provisions on overtime wages and provides for grievance procedures to resolve any differences with respect to those provisions.[4] It is undisputed that, although plaintiffs had all of the information necessary to follow the CBA's procedures, they did not attempt to exhaust those remedies. Plaintiffs' uncontroverted deposition testimony reveals that they did not submit requests to be paid for post-shift overtime pay, as they had done with holiday and weekend overtime (for which defendant had then paid them). Nor did plaintiffs complain to their supervisors about not being paid for working past 4:30 p.m. at any point during the relevant time frame. Finally, it is undisputed that plaintiffs did not follow the grievance procedures prescribed by the CBA before seeking judicial relief.

Plaintiffs do not dispute that the CBA's grievance and arbitration procedures cover their IWPCA claim. Nor do they contend that they need not have exhausted their contractual remedies. Instead, plaintiffs assert that public policy considerations counsel against requiring them to exhaust. They do not, however, explain what those considerations are. Defendant does not address this argument in its reply brief, likely because it is undeveloped and irrelevant.

For the foregoing reasons, the defendant's motion for summary judgment as to Count II is granted.

---

[4] Specifically, Art. XI, § 11.2 states that "all grievances shall be in writing and contain a statement of the facts, the provision(s) of the agreement which the employer is alleged to have violated, and the relief requested." Section 11.4 further provides the necessary steps including to whom the complaint should be submitted and time limits. Under § 11.3, plaintiffs were provided the option to "take up grievances through [these steps] either on their own and individually or with representation by the union."

**III.    Count III: Illinois Minimum Wage Law**

Defendant has also moved for summary judgment on plaintiffs' IMWL claim, which seeks relief for unpaid "earned compensation and overtime wages for time worked after the end of each of their regular shifts and in excess of forty [ ] hours during a workweek."  The IMWL mirrors the FLSA by expressly exempting employees used in an executive, administrative, or professional capacity as defined by the FLSA and its regulations.  820 ILCS 105/4a(2)(E).  For the same reasons defendant correctly contends that it is undisputed that plaintiffs are exempt from the FLSA, plaintiffs are exempt from the FLSA.  Therefore, defendant's motion for summary judgment as to Count III is granted.

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is granted.

**ENTER:**    **August 14, 2012**

_____
**Robert W. Gettleman**
**United States District Judge**